UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CRIMINAL ACTION NO. 7:23-CR-14-DCR-EBA

UNITED STATES OF AMERICA					PLAINTIFF

V.				PLEA AGREEMENT

VIRGIL SAYLOR						DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Indictment, charging a violation of 18 U.S.C. § 371, conspiracy to commit animal fighting. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Count 2.

2. The essential elements of Count 1 are:

    (a) Two or more persons conspired, or agreed, to knowingly sponsor and exhibit animals in an animal fighting venture, a violation of federal law; and

    (b) The defendant knowingly and voluntarily joined the conspiracy.

3. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

    (a) American Testing Facility, also known as Isom and the Whitesburg Chicken Pit, was located in Whitesburg near KY 15, in Letcher County, in the Eastern District of Kentucky. American Testing Facility was built and operated by Robert Dwayne Baker's brother, with the assistance of Baker and others. Between February 2021 through February 2022, American Testing Facility hosted animal

fighting ventures which were events in or affecting interstate or foreign commerce, that involved cockfights between at least two roosters for the purposes of sport, wagering, or entertainment. American Testing Facility contained stadium style seating, one central cockfighting pit, additional side pits, a concession stand, an area for weighing birds, a station for sharpening animal fighting instruments (gaffs), and storage areas for storing live birds. Admission fees were collected from spectators who attended the cockfights at American Testing Facility and concessions were sold to those who attended. Competitors paid a fee to enter his rooster into the animal fighting venture. In February 2022, Baker inherited the property from his brother and continued its operations.

(b) Beginning no later than February 2021, and continuing through on or about February 26, 2022, VIRGIL SAYLOR conspired with others to host regular animal fighting ventures, in the form of cockfights at American Testing Facility, that drew participants from Kentucky and other states. In furtherance of the conspiracy, Baker, along with others, collected admission fees from attendees, employed individuals who worked the fights, and sold concessions to individuals who participated in the animal fighting ventures. VIRGIL G. SAYLOR and Tina Miller were hired to assist running American Testing Facility beginning in February 2021. SAYLOR and Miller were paid $5 for each person who attended the fights. SAYLOR provided security at the weekly fights.

(c) On or about February 26, 2022, SAYLOR and others were involved in animal fighting activities at American Testing Facility with at least 84 entries for a 3-cock event, with approximately 200 individuals in attendance, including several individuals under the age of 16.

4. The statutory punishment for Count 1 is imprisonment for not more than 5 years, a fine of not more than $250,000.00, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies to Count 1, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, except as noted below, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2023, manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 2E3.1(a)(1), the base offense level is 16 because the offense involved an animal fighting venture.

(c) The parties disagree about the application of an increase or decrease in the Defendant's offense level pursuant to U.S.S.G. §§ 3B1.1, 3B1.2.

(d) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a departure motion pursuant to U.S.S.G. Chapter 5, Part K.

8. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The United States will recommend releasing the Defendant on the current conditions for future court appearances if the Defendant does not violate the terms of the order setting conditions of release.

10. The Defendant agrees that he has no interest in the currency seized during the execution of a federal search warrant at 7279 Highway 15, Isom, Letcher County, Kentucky, and identified as a defendant in the related civil forfeiture action before this Court, *United States v. Real Property Known as 7279 Hwy. 15, et.al.,* No. 7:23-cv-56-KKC. The Defendant agrees not to file a claim in the related civil forfeiture action or to otherwise contest the seizure and forfeiture of the seized currency or to assist any other person or entity with doing so on his behalf. The Defendant further voluntarily and knowingly waives all provisions in 18 U.S.C. § 983 pertaining to seizure, notice and/or timing of forfeiture and any constitutional, legal, or equitable arguments regarding the seizure and forfeiture.

11. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing

any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

14. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

15. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

16. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

17. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

Date: 9/13/24     By: *Kate K. Smith* (signature)
Kate K. Smith
Andrea Mattingly Williams
Assistant United States Attorneys

Date: 9·10·24     *Virgil Saylor* (signature)
Virgil Saylor
Defendant

Date: 9-10-24    *Russell Alred* (signature)
Russell Alred
Attorney for Defendant