UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CRIMINAL ACTION NO. 7:23-CR-14-KKC-EBA

UNITED STATES OF AMERICA                                    PLAINTIFF

V.         UNITED STATES'S SENTENCING MEMORANDUM
ON UNRESOLVED OBJECTIONS

VIRGIL G. SAYLOR
TINA MILLER                                                             DEFENDANTS

\* \* \* \* \*

The United States respectfully asks the Court to overrule the defendants' objections to the imposition of a leadership enhancement pursuant to U.S.S.G. § 3B1.1(b) and to impose a guideline sentence. The United States agrees with the USPO that the Defendants' Total Offense Level is 16, and that their Criminal History Category is I. [Saylor PSR at ¶¶ 35, 47; Miller PSR at ¶¶ 35, 46.] The Defendants' applicable Guidelines range is 21 to 27 months for their roles in the animal fighting conspiracy at American Testing Facility ("ATF"). [Saylor PSR at ¶ 74; Miller PSR at ¶ 71.]

### A. The Defendants' objections to the role adjustment should be overruled.

The Presentence Investigation Report ("PSR") recommends imposition of a three-level enhancement under U.S.S.G. § 3B1.1(b). [*See* Saylor PSR at ¶ 30; Miller PSR at ¶ 30.] This enhancement applies where "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or

was otherwise extensive." U.S.S.G. § 3B1.1(b). Miller and Saylor do not dispute that the animal fighting activity at ATF involved more than five participants; instead, their objections focus solely on their role in the enterprise. *See* Virgil Saylor Objections Dated 1/1/24; Tina Miller Objections Dated 1/1/24. Saylor claims his only involvement at ATF was to provide security. Miller claims her only involvement "was collecting money from contestants and dividing it up for payments back to winners" and "making announcements."

In this case, the evidence overwhelmingly establishes that Miller and Saylor ran the criminal animal fighting activity at ATF. [Saylor PSR at ¶¶ 8-22.] They first assisted Timothy Sizemore, a central figure in the Kentucky cockfighting industry, with banding and matching roosters at another venue. [Saylor PSR at ¶ 8.] They then were hired to organize the cockfighting activity at the ATF pit in Whitesburg, Kentucky. [*Id.*] According to Facebook records and interviews, Saylor and Miller were hired by Timothy Baker to organize the fighting activity – which included receiving fees from fighters, matching and banding the birds for the fights, announcing the activities, calculating the wins of the various fighters, and distributing the gambling proceeds to the victors. [Saylor PSR at ¶¶ 9-12.] For this, Saylor and Miller received $5 per attendee at the fights. [*Id.* at ¶ 21.] According to Saylor's own calculations, this amounted to, on average, $1,500 per fight. This information was substantiated by undercover surveillance of two fights prior to the raid of the active animal fighting venture underway at the ATF on February 26, 2022. [*Id.* at ¶¶ 13-15.] During the search, law enforcement determined that Saylor and Miller had organized and managed an animal fighting event that day,

including approximately 84 entries for a 3-cock event, with approximately 200 people in attendance. [*Id*. at ¶ 15.] Saylor and Miller were interviewed by law enforcement during the search and voluntarily confessed to their involvement in running the cockfights at the American Testing Facility. [*Id*. at ¶ 18.]

In support of these facts and the leadership enhancement, the United States submits the following documentary evidence:

- Law enforcement reports from the surveillance conducted on February 5 & 12, 2022, documenting and identifying Saylor and Miller as the individuals organizing the animal fighting activity on those dates. [*See* Exhibits 1 & 2.]

- Law enforcement report from the day of the raid, February 26, 2022, documenting Saylor and Miller's interview in which they admit they were responsible for organizing the animal fighting activity at ATF. [*See* Exhibit 3 at 6-10.]

- Facebook records containing communications between Saylor and Sizemore, reflecting Saylor being hired by Baker to run the fights at ATF and showing Saylor distributing the fighting schedule at ATF. [*See* Exhibit 4 at 16-26 (discussing working at Blackberry), 28 (offering for Tina to help match at Blackberry), 32 (discussing Whitesburg and writing "we're going to operate the whole pit"), 37 (coordinating schedules of the respective pits), 41-43 (distributing ATF schedule), 46 (asking for referee referrals).]

- Interview notes from Rob Baker reflecting arrangement between Saylor, Miller, and Baker.  [*See* Exhibit 5; *see also* Exhibit 3 at 10-11.].

- Interview report of Timothy Sizemore reflecting information about Saylor and Miller.  [*See* Exhibit 6 at 4.].

- Interview notes and text messages between Saylor and a referee at ATF reflecting Saylor recruiting a referee.  [*See* Exhibit 7.].

- Interview report of co-defendant Brandon Honeycutt reflecting roles of Saylor, Miller, and Baker.  [*See* Exhibit 8.].

- Interview reports of other individuals interviewed by law enforcement on the day of the raid, describing Virgil Saylor and Miller's roles as the managers of the cockfighting activity at ATF.  [*See* Exhibits 9 & 10.].

In addition, the United States will tender to the Court a video recording from one of the surveilled fights, reflecting Miller's role in the operation of the pit.  In the video, Miller can be heard announcing,

- "I had 75 entries, had 77 but two pulled"

- "If you are with the law or any animal rights association, identify yourself now"

- "No cellphones in the building, if me or my referees see it, we will take the phone", then she calls off numbers.  Later, she says, "I need entry 52 to pick up"

- "Guys, I need everyone to listen, if we have visitors, I'll announce it; Ill have everyone leave the pit; If you have weapons, go to your cockhouses and take them off; bring me your tickets"
- "If anybody lost a lock, I've got it up here at the match…"
- She also reminds people that they have 20 minutes to get your heels on and get the scales when your numbers are called.

Throughout the video, she is announcing numbers for the fighters and telling individuals to pick up items.  From these statements, it is clear Miller was responsible for matching the birds, directing individuals involved in the animal fighting, and in a position of authority at the venue.

This support proves, by a preponderance of the evidence, that Saylor and Miller were the managers or supervisors of the animal fighting activity at ATF.  By their own admissions, Saylor and Miller were the people in charge of the animal fighting activity at ATF, coordinating the actions of the referees and all the individuals participating in the actual animal fighting activity.  *See* U.S.S.G. § 3B1.1(b), app. n. 4 (identifying decision making authority, recruitment of accomplices, claimed right to a larger share of proceeds, degree of participation in planning the crime, and degree of control exercised over others as relevant factors).

The defendants' objections to applying U.S.S.G. § 3B1.1(b) should be overruled.

**B. A guideline sentence is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter others.**

Under 18 U.S.C. § 3553(a)(2), the sentence imposed must "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," and "afford adequate deterrence to criminal conduct," among other factors that are less applicable in this case. 18 U.S.C. § 3553(a)(2). Each of the factors quoted above necessitates a guidelines sentence for these defendants. While the sentencing guideline for animal fighting specially contemplates the need for an upward departure when the animal fighting venture is on an exceptional scale, *see* U.S.S.G. § 2E3.1, note #2, the United States believes a guideline sentence fulfills the aims of Section 3553, for these particular defendants.

Cockfighting is organized, moneymaking, and cold-blooded entertainment at the expense of the animals involved. It is illegal under federal law and in all 50 states. Cockfighting is an extreme form of cruelty to animals. Game foul are bred to fight. Not only do the animals suffer grave injuries and frequently die during the fights, but they are also mistreated before, and after, the fights. They have their waddles, combs, and spurs crudely dubbed, or amputated, for the purposes of facilitating fights. A referee supervises the fights between the roosters, which end when one rooster dies or refuses to continue to fight. If not killed during the fight, the losing rooster is usually killed after the fight. If both roosters are paralyzed or too injured to continue at the end of a fight, but have not yet died, handlers place both birds in a small enclosure known as the "drag pit" to wait to see which one dies first–a process that can take hours.

Cockfighting is not only a barbaric form of animal cruelty, but a public health risk. Cockfighting is associated with the spread of deadly diseases, such as the fatal Viral Newcastle's Disease and avian flu, which can spread to humans.[1] According to Dr. Christopher Craig, the Area Veterinarian in Charge of Kentucky for the United States Department of Agriculture, unregulated transport and mixing of bird populations can impede the United States's tracking and management of disease spread and "create vulnerability in the resilience of our nation's food security." *See* Exhibit 11: Christopher Craig Letter Dated Feb. 6, 2024. This is not a remote concern in Kentucky, where the poultry industry in Kentucky is valued at $1.2 billion annually. Kentucky ranks seventh in the nation in terms of broiler production with over 300 million broilers. The broiler-breeder industry employs approximately 63,000 people across the state and supports an additional 20,000 jobs in supply and ancillary industries. The disease risk to this industry is not remote; avian flu has been found recently in both poultry processing plants and in wild foul, and United States recently documented the first human death from avian flu.[2]

In a single year, Saylor and Miller easily sponsored animal fighting involving thousands of birds and thousands of dollars in illegal gambling. According to the schedule distributed via Facebook, Saylor and Miller coordinated over 30 cockfights a

---

[1] It is common for handlers of gamecocks to suck the blood out of the rooster's neck to keep it from drowning so it can fight another round. This technique promotes the spread of avian disease in humans. *See*, *e.g*., Tim Rogers, *Is that a Rooster in Your Mouth?*, Time, Feb. 16, 2007, http://www.content.time.com/time/world/article/0,8599,1590985,00.

[2] *See* https://content.govdelivery.com/accounts/USDAAPHIS/bulletins/30a6138; https://fw.ky.gov/News/Pages/Avian-Influenza-Detected-in-Jefferson-County-Waterfowl.aspx; https://www.today.com/health/disease/bird-flu-mortality-rate-rcna186558.

year. Assuming a conservative estimate of 300 birds participating in a single event, there were thousands of birds fighting to the death at ATF, in the year in which Saylor and Miller organized the fights. Given that the guideline range would be the same if an individual organized *a single fight*, a guideline sentence is plainly warranted. *See United States v. Thompson*, No. 7:16-CR-122-BO-2, 2017 WL 6619370, at *2 (E.D.N.C. Dec. 28, 2017), *aff'd sub nom. United States v. Richardson*, 796 F. App'x 795 (4th Cir. 2019) (departing upward by 18 months for defendant who sponsored three dogs in three fights and owned 32 dogs at his property); *United States v. Cook*, No. 7:16-CR-122-BO-8, 2017 WL 6055385, at *2 (E.D.N.C. Dec. 7, 2017), *aff'd sub nom. United States v. Richardson*, 796 F. App'x 795 (4th Cir. 2019) (departing upward to 45 months from range of 15-21 noting "the guidelines do not differentiate between those offenders who engage in animal fighting once or twice and those who offend repeatedly over a long period of time").

Courts should endeavor to "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The most effective way to avoid such disparities is to sentence each defendant within the correctly calculated guideline range. *See United States v. Smith*, 564 F. App'x 200, 205 (6th Cir. 2014). "[O]ne of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences, and considering that most sentences are within the Guidelines, the Guidelines themselves represent the best indication of national sentencing practices." *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008). A guideline sentence would not create unwanted sentencing disparities, and be sufficient but not greater than necessary to fulfil the aims of Section 3553.

C. **CONCLUSION**

This conduct warrants a guideline sentence to reflect the seriousness of the offense and promote respect for the law. Such a sentence would also afford general deterrence within the cockfighting community, discouraging others from organizing similar operations.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

By: /s/ Kate K. Smith
Kate K. Smith
Andrea Mattingly Williams
Assistant United States Attorneys
260 W. Vine Street, Suite 300
Lexington, Kentucky 40508
(859) 685-4899
(859) 685-4855
Andrea.Mattingly.Williams@usdoj.gov
Kate.Smith@usdoj.gov

**CERTIFICATE OF SERVICE**

On January 13, 2025, I electronically filed this document through the ECF system, which will send notice to counsel of record.

/s/ Kate K. Smith
Assistant United States Attorney